UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HERBERT E. ROBERTSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:22-cv-01193-JMS-CSW |
| DENNIS REAGLE, et al., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Herbert Robertson alleges in this lawsuit that, when he was housed at Pendleton Correctional Facility ("PCF"), the defendants were deliberately indifferent to his back and knee pain. Defendant Warden Reagle seeks summary judgment on Mr. Robertson's claims against him. For the reasons that follow, the motion for summary judgment is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Warden Reagle moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Robertson and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Robertson was incarcerated at PCF during the time of the incidents at issue. Dkt. 145-1 at 11. Dennis Reagle served as the Warden of PCF. Dkt. 15 at 3. As Warden, he does not have any medical training or expertise and lacks the authority to dictate or override the clinical decision-making of medical staff. Dkt. 145-3 at 4 (Reagle's Responses to Requests for Admission).

### B. Mr. Robertson's Medical Care

Between February 7, 2021, and September 26, 2021, Mr. Robertson contends he fell several times. Dkt. 145-1 at 36, 58, 59. During that time, Mr. Robertson saw several medical providers with minimal improvement. Dkt. 145-4 at 1-10 (Medical Records); dkt. 145-1 at 20-22, 24-27, 28-29 (Robertson Dep.). In about July of 2021, Mr. Robertson personally asked Warden

Reagle for help with his leg and back injuries. Dkt. 164 at 63 (Robertson Aff.). Warden Reagle took a photo of Mr. Robertson and told him he would get medical attention. *Id.*

Among other medical visits, Mr. Robertson saw Dr. Pierce on August 17 and September 7 for his complaints for leg and knee pain. Dkt. 145-4 at 1-3; dkt. 164 at 65-68. Dr. Pierce referred Mr. Robertson to a physical therapist, who saw him on September 20. Dkt. 145-4 at 5-7. The physical therapist noted right knee pain and severe upper right leg muscle atrophy and requested that Mr. Robertson be issued a pair of crutches. *Id.*

Mr. Robertson filed an emergency medical grievance on September 22, complaining that he had not yet received his crutches. Dkt. 145-5 at 22 (Grievances). The grievance was forwarded to Health Services Administrator Lisa Hamblen to investigate. *Id.* at 21. The response noted that she had conferred with Dr. Pierce regarding whether the crutches were medically necessary considering the institutional safety and security concerns. *Id.* Ms. Hamblen cautioned that such access could be dangerous given the potential for crutches to be used as a weapon, Mr. Robertson's history of violence, and his placement in G-House where such medical devices are generally banned because G-House is primarily comprised of violent offenders.[1] *Id.* at 17, 21.

Mr. Robertson contends that his cell had no braces or bars. Dkt. 164 at 9-1 ("the non-handicap cells do not have bars specifically designed for use by handicapped persons") (Reagle's Responses to RFA). But Warden Reagle explains that "medical staff were only concerned with a risk while walking unsupported by custody staff and in the G-House he would be supported by staff escort or a wheelchair any time he was outside the cell. Inside the cell, all areas of the cell have some support available, and the space is not so large that one could walk without reach of a

---

[1] Mr. Robertson contends that he was not housed there because of violence, but because of an administrative hold pending transfer. Dkt. 164 at 62 (Robertson Aff.); at 98 (Housing Review Form stating that Mr. Robertson is in G-House pending transfer). Mr. Robertson's classification records reflect that he was convicted of the disciplinary charge of battery against an offender. Dkt. 145-6.

3

solid object." Dkt. 145-2 at 2. In G-House, Mr. Robertson could move throughout the unit with custody escorts or a wheelchair and was housed on a bottom floor range. *See* Dkt. 145-2 at 2. On September 30, 2021, Mr. Robertson appealed the denial directly to Warden Reagle. In his appeal, Mr. Robertson stated that he fell on September 26 in his cell. Dkt. 145-5 at 17. Warden Reagle reviewed the grievance documents and discussed the rationale for the denial with Ms. Hamblen who informed him that Dr. Pierce did not recommend the crutches because he determined that they were not medically necessary based on their limited function in Mr. Robertson's recovery, the presence of suitable alternative physical supports in G-House, and the serious safety and security risks. *Cf. id.* On November 5, 2021, Warden Reagle denied the appeal. *Id.* Warden Reagle issued an order to G-House custody staff that all of Mr. Robertson's in-house movement was to be conducted using a two-person escort or a wheelchair. Dkt. 145-5 at 17, 21; dkt. 145-2 at 2, 5, 7; dkt. 145-1 at 85 ("He had sent an order that I would be … escorted with two escorting staff."). At that time, Warden Reagle had observed no signs of serious impairment from Mr. Robertson's lack of access to crutches and noted that he was able move about the facility, use the showers, go to the medical station, and attend recreation during that time without apparent issue. Dkt. 145-2 at 5. There is no evidence that if Mr. Robertson was ever denied use of a wheelchair or two-person escorts, Warden Reagle was aware of such alleged deprivations. *See* dkt. 145-2 at 6, 7. Mr. Robertson remained on the bottom range until he was transferred to another facility on December 30, 2021. Dkt. 145-1 at 84.

      On September 30, Mr. Robertson wrote a letter to Warden Reagle asking for an accessible cell. Dkt. 164 at 102. But there is no evidence that Warden Reagle received this letter. Warden Reagle affirms: "I have no recollection of receiving this letter, specifically. I also do not have any records of when I would receive letters from individual offenders. I rarely will review these letters

4

personally, but rather they would typically be distributed to the staff most able to respond to the content of the letter." Dkt. 164 at 9.

Mr. Robertson fell again in his cell on October 26. Dkt. 164 at 99-101.

### III.
### Discussion

Warden Reagle argues in support of his motion for summary judgment that, as a non-medical correctional official, he was not deliberately indifferent to Mr. Robertson's serious medical needs when Mr. Robertson was denied crutches and an accessible cell.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For purposes of the summary judgment motion Warden Reagle does not deny that Mr. Robertson's leg and back pain was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Warden Reagle acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to [Mr. Robertson]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). The subjective prong of a deliberate indifference claim requires a showing that the "prison official

knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (*Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012)). (internal quotations omitted). Mere negligence or even objective recklessness are not enough to show deliberate indifference. *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (citing *Farmer v. Brennan*, 511 U.S. at 836-38 (1994)). Rather, the mental state required to demonstrate the subjective prong is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald*, 982 F.3d at 458.

    Mr. Robertson has not designated evidence that would allow a reasonable factfinder to conclude that Warden Reagle's actions approached total unconcern for a serious risk to Mr. Robertson. Warden Reagle was directly involved in Mr. Robertson's request for crutches only when, as Mr. Robertson explains, he complained of his pain to him, and in responding to his grievance appeal. But it is undisputed that Mr. Robertson was under the care of medical providers in the summer of 2021, when Mr. Robertson contends that he spoke directly to Warden Reagle regarding his pain. *See* Dkt. 145-4 at 1-10; dkt. 164 at 65-68. Next, when Warden Reagle responded to Mr. Robertson's grievance appeal regarding the denial of crutches, he concluded that, based on Ms. Hamblen's conversation with Dr. Pierce, Mr. Robertson was receiving adequate care. Dkt. 145-5 at 17. Mr. Robertson argues that Dr. Pierce never directly rescinded the order for crutches, dkt. 164 at 50, but he does not dispute that the information available to Warden Reagle was that Ms. Hamblen had spoken to Dr. Pierce and determined that crutches were not necessary in light of the security concerns and alternative means Mr. Robertson could use to move around. Dkt. 145-5 at 17. Further, there is no evidence to dispute that Warden Reagle believed Mr. Robertson had sufficient support to move about the facility when necessary. *See* dkt. 145-2 at 5.

Mr. Robertson suggests that Warden Reagle violated IDOC policy, which required the emergency grievance to be responded to within one business day. Dkt 163 at 7-8. But, even if this is the case, he had not shown that this policy violation amounted to deliberate indifference. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of departmental regulation and practices.") (cleaned up). Mr. Robertson also points out that Ms. Hamblen is not a medical provider. Dkt. 164 at 123-24. But it is undisputed that Ms. Hamblen conferred with Dr. Pierce, and Warden Reagle's conclusion rested on this discussion. Dkt. 145-5 at 17.

Warden Reagle's denial of Mr. Robertson's grievance appeal of the denial of his request for crutches does not demonstrate a near total unconcern for Mr. Robertson's safety. Accordingly, Warden Reagle's motion for summary judgment is granted.

## IV.
## Conclusion

Warden Reagle's motion for summary judgment, dkt. [144], is **GRANTED**. The **clerk shall terminate** Warden Reagle as a defendant. No partial final judgment shall issue.

**IT IS SO ORDERED.**

Date: 8/29/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

HERBERT E. ROBERTSON
885415
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel